UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON


CHARLENE CHANDLER,

        Plaintiff,

v.                              Civil Action No. 2:20-cv-00217

GREENLIGHT FINANCIAL SERVICES;
U.S. BANK NATIONAL ASSOCIATION,
as Trustee for TERWIN MORTGAGE
TRUST 2006-4SL, ASSET-BACKED
CERTIFICATES, SERIES 2006-4SL
and SPECIALIZED LOAN SERVICING LLC,

        Defendants.


<u>MEMORANDUM OPINION AND ORDER</u>

        Pending are the motion to dismiss plaintiff Charlene
Chandler's original complaint (ECF No. 3) and the motion to
dismiss plaintiff Charlene Chandler's first amended complaint
(ECF No. 12), filed April 1, 2020, and May 6, 2020,
respectively, by defendants U.S. Bank National Association
("U.S. Bank") and Specialized Loan Servicing LLC ("Specialized
Loan Servicing"), collectively referred to herein on occasion as
"the defendants."


I.  Background


        Chandler alleges that she is a single mother who
resides in Cross Lanes, Kanawha County, West Virginia.  ECF No.
8, at ¶ 2 (First Amended Complaint).  She states that she has a

high school education and has worked as a secretary for the
State of West Virginia for more than thirty years.  <u>Id.</u>

     After her former home was flooded in 2004, Kanawha
County purchased that property from Chandler with money from a
Federal Emergency Management Agency grant.  <u>Id.</u> at ¶¶ 8-9.
Chandler bought a $95,000 townhome located at 4 Maple Tree Lane
in Cross Lanes on March 30, 2004, using the money from Kanawha
County's purchase of her former home to make a down payment on
the townhome.  <u>Id.</u> at ¶¶ 8-9.  She "financed the remaining
balance of the purchase price of her new home with a mortgage
loan from America's Wholesale Lender, the sub-prime division of
Countrywide Home Loans ("Countrywide"), on March 30, 2004, for
$60,500, at an interest rate of 5.5% for a term of thirty
years."  <u>Id.</u> at ¶ 10.  "Approximately six months later,"
Countrywide solicited Chandler for a second mortgage, which it
thereafter originated for $16,200 on November 16, 2004, at an
interest rate and term that are not stated in the complaint.
<u>Id.</u> at ¶¶ 11-12.

     "In or about November 2005," Chandler claims that she,
"responded to a solicitation from Defendant Greenlight Financial
about debt consolidation."  <u>Id.</u> at ¶ 13.  Greenlight thereafter
originated a $46,000 home-secured loan with a 13.9% interest
rate for a twenty-five-year term on December 20, 2005.  <u>Id.</u> at ¶
14.  The loan is now held by U.S. Bank.  <u>Id.</u> at ¶ 4.

Chandler alleges that Greenlight directed her to "sign the closing papers in a public setting at Wendy's during busy meal hours without the benefit of a person licensed to conduct a real estate secured loan closing." Id. at ¶ 16.  Inasmuch as the "circumstances of the closing" of the loan were "very public," Chandler asserts that she "was not able to freely ask questions and was unable to understand the terms or import of the transaction." Id. at ¶ 17.  Chandler used the proceeds from this loan to satisfy the second mortgage from Countrywide, the then outstanding balance of which is not stated, as well as unsecured credit card debt, which is also unstated. Id. at ¶ 15.

"[I]n approximately April 2006," defendant Specialized Loan Servicing began to service this loan for Greenlight. Id. at ¶ 18.  Chandler alleges that defendant U.S. Bank is now holder of the mortgage, as Trustee for Terwin Mortgage Trust 2006-4SL, Asset-Backed Certificates, Series 2006-4SL, and "is liable for all claims and defenses against the loan." Id. at ¶ 4.

On October 27, 2008, Chandler filed for Chapter 7 bankruptcy in the United States Bankruptcy Court for the Southern District of West Virginia. Id. at ¶ 19. See generally In re: Cathy Charlene Chandler, 2:08-bk-21032 (Bankr. S.D. W. Va. 2008).  She alleges that she was current with her payments

3

to Specialized Loan Servicing on the December 20, 2005 loan originated by Greenlight at the time she filed for bankruptcy. ECF No. 8, at ¶ 19.

U.S. Bank and Specialized Loan Servicing have produced filings from the bankruptcy proceeding, which include Chandler's "Schedule D – Creditors Holding Secured Claims" form, filed November 10, 2008.  ECF No. 12-1, at 11 (Chandler's Bankruptcy Filings).  This filing includes a list of creditors holding secured claims.  Id.  Countrywide is listed as a creditor owed $56,500 secured by a deed of trust on the 4 Maple Tree Lane townhome, and Specialized Loan Servicing is listed as a creditor owed $45,300 secured by a "Second Lien on Residence" with respect to the same property.  Id.  Schedule D values the townhome as being worth $95,500.  Id.

The bankruptcy filings produced by the defendants also include Chandler's November 10, 2008 "Chapter 7 Individual Debtor's Statement of Intention."  Id. at 32.  This filing specifies that with respect to the 4 Maple Tree Lane townhome, Chandler intended to "retain the collateral and continue to make regular payments" to both Countrywide and Specialized Loan Servicing; that is, each Countrywide and Specialized Loan Servicing is stated separately and the language just quoted is also stated separately as to each of them.  Id.  The statement

of intention is set forth on a single page and bears Chandler's digital signature.  Id.

    According to the Discharge of Debtor order provided by the defendants, Chandler was discharged from bankruptcy on February 9, 2009, pursuant to 11 U.S.C. § 727.[1]  ECF No. 12-2 (Discharge of Debtor order).  Notably, the Discharge of Debtor order contains the following information as a part of its "Explanation of Bankruptcy Discharge in a Chapter 7 Case":

> Collection of Discharged Debts Prohibited
>
> The discharge prohibits any attempt to collect from the debtor a debt that has been discharged.  For example, a creditor is not permitted to contact a debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a discharged debt from the debtor . . . . A creditor who violates this order can be required to pay damages and attorney's fees to the debtor.
>
> However, a creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case.  Also, a debtor may voluntarily pay any debt that has been discharged.

Id. at 2.

---

[1]   With certain exceptions not claimed to be relevant here, a discharge under 11 U.S.C. § 727(a) operates to "discharge[] the debtor from all debts that arose before the date of the order for relief under [Chapter 7]." 11 U.S.C. § 727(b).  Further, a discharge, "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2).

Chandler alleges that "[h]ad the subject loan been a debt consolidation loan and not a second mortgage, as Plaintiff understood, the loan would have been discharged in bankruptcy. Indeed, given the high 13.9% interest rate, Plaintiff's understanding that the subject loan was not home secured was reasonable." ECF No. 8, at ¶ 20.  Of course, the loan was a consolidation loan and was known by Chandler to be such a loan inasmuch as the very purpose of the loan was to combine in one loan her obligations on the Countrywide second mortgage and her credit card debt, the latter of which is a kind of debt that customarily carries a higher rate of interest than that of the combined loan she signed.  Further, when a second mortgage is being refinanced along with other debt, there is nothing unusual for the lender, who is paying off the existing second mortgage, to succeed to second mortgage status on all that is refinanced.

The plaintiff also states that Specialized Loan Servicing failed to collect on the lien following her discharge and did not send, "monthly statements, coupon books, or other demands for payment." Id. at ¶¶ 21-22.  Yet, not sending these statements and demands is entirely consistent with the Discharge of Debtor order just quoted.  The debt was discharged.

6

The plaintiff adds that "[m]ore than ten years later, after failing to collect on the lien or advise Plaintiff of her obligations, Defendant SLS issued a notice of right to cure default in July 2019." Id. at ¶ 23. Chandler alleges that Specialized Loan Servicing is now attempting to foreclose on its lien. Id. at ¶ 24.

Chandler filed this action in the Circuit Court of Kanawha County on February 10, 2020. ECF No. 1-1 (Original Complaint). Her original complaint included three counts: "Count I – Unconscionable Inducement," "Count II – Contract Defense of Fraud," and "Count III – Estoppel." Id. at ¶¶ 27-44.

U.S. Bank and Specialized Loan Servicing removed the case to this court on March 25, 2020.[2] ECF No. 1 (Notice of

---

[2]    U.S. Bank and Specialized Loan Servicing assert that Greenlight's consent to removal was unnecessary under 28 U.S.C. § 1446(b)(2)(A) inasmuch as Greenlight had not been served at the time of removal. ECF No. 1, at 1 n. 1. Based on Chandler's June 16, 2020 motion for entry of default against Greenlight (ECF No. 18) and the exhibits attached thereto, it appears that Greenlight was actually served through the West Virginia Secretary of State on February 24, 2020, a month prior to removal. ECF No. 18-2.

"Failure of all defendants to join in the removal petition does not implicate the court's subject matter jurisdiction," but rather serves as "merely an error in the removal process." Payne ex rel. Estate of Calzada v. Brake, 439 F.3d 198, 203 (4th Cir. 2006). Thus, "a plaintiff who fails to make a timely objection" within 30 days of removal "waives the objection." Id. (citing 28 U.S.C. § 1447(c); Nolan v. Prime Tanning Co., 871 F.2d 76, 78 (8th Cir. 1989)). Since Chandler did not file a motion to remand or otherwise object to removal on the basis that Greenlight did not consent to removal, she has waived such objection.

Removal).  These defendants thereafter filed their original

motion to dismiss on April 1, 2020.  ECF No. 3 (Original Motion

to Dismiss).

Pursuant to Federal Rule of Civil Procedure

15(a)(1)(b), Chandler filed her first amended complaint on April

22, 2020.  ECF No. 8.  On April 29, 2020, she filed a response

to the original motion to dismiss requesting that the court

consider it moot since she filed the first amended complaint.

ECF No. 9 (Response in Opposition to Original Motion to

Dismiss).

The first amended complaint alleges six counts: "Count

I — Unconscionable Inducement," "Count II — Contract Defense of

Fraud," "Count III — Estoppel," "Count IV — Violation of

Regulation Z Periodic Statement Rule," "Count V — Declaratory

Judgment," and "Count VI — Unconscionable Debt Collection."  Id.

at ¶¶ 27-52.  With respect to Count I, the plaintiff claims that

she and Greenlight "occupied dramatically unequal bargaining

positions," and "[t]he contract was formed without a true

meeting of the minds" inasmuch as she is not financially

sophisticated, the mortgage contract drafted by Greenlight was

adhesive, "[t]he contract at issue was induced by

misrepresentations/suppressions including that the loan would be

a home secured loan," and the contract closing "did not provide

Plaintiff with a reasonable opportunity to understand the import

or impact of the transaction." Id. at ¶¶ 27-29. She asserts that the contract's terms are substantively unconscionable and commercially unreasonable inasmuch as "the loan is home-secured, includes previously unsecured debt, and has an interest rate typically accompanying unsecured loans," i.e., 13.9%. Id. at ¶ 30. Chandler requests set-off of the amount claimed to be due under the loan pursuant to W. Va. Code § 46A-5-102, and seeks equitable relief, "including but not limited to restitution and release of lien, and "[s]uch other relief as the Court may deem equitable and just." Id. at ¶ 31(a)-(c).

With respect to Count II, the plaintiff alleges that Greenlight "represented to Plaintiff that the loan would be a debt-consolidation loan and suppressed that it would be a home-secured mortgage loan," but, unbeknownst to her, the loan turned out to be a home-secured second mortgage. Id. at ¶¶ 33-34. She alleges that Greenlight "intentionally misrepresented the nature of the loan" to her and that this misrepresentation was intentional and material. Id. ¶¶ 35-36. Chandler states that she "reasonably relied upon Defendant's misrepresentation and the origination of the loan being consistent with prudent and proper lending practices when entering into the loan agreement," and that she has been damaged by Greenlight's representations and suppressions. Id. at ¶¶ 37-38. She again prays for equitable relief, including restitution and release of the lien. Id. at ¶ 38.

As for the estoppel claim pled in Count III, Chandler alleges that Specialized Loan Servicing has serviced the loan since 2006 but, "[f]ollowing Plaintiff's bankruptcy, Defendant SLS ceased servicing Plaintiff's loan, including by no longer sending monthly statements." Id. at ¶¶ 40-41.  She asserts that as a result, she, "had a reasonable expectation that Defendant cancelled or otherwise wrote off her loan following her bankruptcy discharge." Id. at ¶ 42.  Since Specialized Loan Servicing failed to send her monthly statements or otherwise service the loan, Chandler claims that she "did not make payments or other arrangements to satisfy Defendant's lien" and has been injured by her reliance on Specialized Loan Servicing's conduct. Id. at ¶¶ 43-44.  She prays that the court estop Specialized Loan Servicing from foreclosing and grant other relief deemed to be equitable and just. Id. at ¶ 44(a)-(b).

Count IV, entitled "Violation of Regulation Z Periodic Statement Rule," alleges that "[f]rom January 10, 2014 to the present, Defendant SLS has failed to send Plaintiff periodic monthly statements as required by 12 C.F.R. § 1026.41."[3] Id. at ¶ 46.  She states that, "[i]n fact, Defendant has failed to provide Plaintiff any monthly billing statements since October

---

[3]    The court notes that this regulation was first effective beginning January 10, 2014.  See Mortgage Servicing Rules Under the Truth in Lending Act (Regulation Z), 78 Fed. Reg. 10902 (Feb. 14, 2013) (to be codified at 12 C.F.R. pt. 1026) (setting a January 10, 2014 effective date).

2008." Id. at ¶ 47.  Chandler requests actual and statutory damages, "[a] declaration that the Defendant cannot charge interest on the loan from January 10, 2014 to the present," attorney's fees and costs, and further relief that is deemed to be equitable and just.  Id. at ¶ 47(a)-(d).

In her Count V declaratory judgment claim, Chandler asserts that she, "last paid on the subject loan prior to filing for bankruptcy protection in 2008," and that Specialized Loan Servicing failed to collect until it issued a notice of default in July 2019.  Id. at ¶¶ 49-50.  She seeks a declaratory judgment that Specialized Loan Servicing is "barred from collecting the subject debt."  Id. at ¶ 50.

Finally, Chandler's unconscionable debt collection claim found in Count VI asserts that Specialized Loan Servicing, "collected on a debt that was barred by the statute of limitations without including the required disclosure pursuant to West Virginia Code section 46A-2-128(f)."  Id. at ¶ 52.  She requests "[a]ppropriate statutory penalties," "actual" damages, attorney's fees, and "[a]ppropriate equitable relief."  Id. at ¶ 52(a)-(d).

U.S. Bank and Specialized Loan Servicing filed the motion to dismiss the first amended complaint on May 6, 2020. ECF No. 12 (Motion to Dismiss the First Amended Complaint). Chandler filed a response on May 20, 2020, to which the

defendants replied on May 27, 2020. ECF No. 14 (Response in Opposition to Motion to Dismiss the First Amended Complaint); ECF No. 15 (Reply in Support of Motion to Dismiss the First Amended Complaint).

Chandler filed a motion for entry of default against Greenlight, which has not appeared in this action, on June 16, 2020. ECF No. 18 (Motion for Entry of Default). The Clerk entered default against Greenlight on June 29, 2020. ECF No. 20 (Entry of Default). Chandler has not moved for default judgment against Greenlight.

## II. Legal Standard

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) correspondingly provides that a pleading may be dismissed when there is a "failure to state a claim upon which relief can be granted."

To survive a motion to dismiss, a pleading must recite "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007); see also Monroe v. City of Charlottesville, 579 F.3d 380, 386 (4th Cir. 2009) (quoting Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008)). In other words, the "[f]actual

allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citation omitted).

The court "must accept as true all of the factual allegations contained in the [pleading]." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citing Twombly, 550 U.S. at 555-56). Such factual allegations should be distinguished from "mere conclusory statements," which are not to be regarded as true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id.

Rule 12(d) provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." The Fourth Circuit has clarified that documents attached to a motion to dismiss may be considered without converting the motion to one for summary judgment "so long as they are integral to the complaint and authentic." Philips v. Pitt Cnty. Mem. Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (citing Blankenship v. Manchin, 471 F.3d 523, 526 n. 1 (4th Cir. 2006)). Further, courts "may properly take judicial notice of matters of public record" in a Rule 12(b)(6) review. Id. (citing Hall v. Virginia, 385 F.3d 421, 424 (4th Cir. 2004)); see also Lydick v. Erie Ins. Prop. & Cas. Co., 358

13

F. Supp. 3d 552, 557 (S.D. W. Va. 2019).

Inasmuch as the bankruptcy proceeding filings attached to the motion to dismiss the original complaint and the motion to dismiss the first amended complaint are integral to the allegations of the complaint and no party disputes their authenticity, the court will consider them without converting the motions to motions for summary judgment.  Additionally, these documents are matters of public record from In re: Cathy Charlene Chandler, 2:08-bk-21032 (Bankr. S.D. W. Va. 2008), and the court accordingly takes judicial notice of them.

### III.  Analysis

#### A.  The Original Complaint

Chandler has acknowledged that the first amended complaint has displaced the original complaint by requesting that the first motion to dismiss be denied as moot.  The court agrees, and the first motion to dismiss is denied as moot.

#### B.  The First Amended Complaint

##### 1.  Unconscionable Inducement (Count I)

U.S. Bank and Specialized Loan Servicing contend that Count I, entitled "Unconscionable Inducement," of the first amended complaint should be dismissed because, they say, no

14

common law claim for unconscionable inducement exists in West Virginia. ECF No. 13, at 5-6 (Memorandum in Support of Motion to Dismiss the First Amended Complaint) (citing Staats v. Bank of Am., N.A., No. 3:10-CV-68, 2010 WL 10899255, at *9 (N.D. W. Va. Nov. 4, 2010); Mountain State Coll. v. Holsinger, 742 S.E.2d 94, 102 n. 9 (2013)). The defendants assert that such a cause of action exists under W. Va. Code § 46A-2-121 of the West Virginia Consumer Credit and Protection Act ("WVCCPA") but argue that this was not pled and that the plaintiff cannot amend her complaint to bring such a claim inasmuch as it would be barred by the four-year limitations period found in W. Va. Code § 46A-5-101(1). Id. at 6 n. 3. The defendants further argue that insofar as Chandler attempts to ground her claim in W. Va. Code § 46A-5-102 to avoid the four-year limitations period, that section is inapposite inasmuch as it only applies, "where a consumer is sued for the balance due on a loan, not where a consumer brings the action." Id. (citing W. Va. Code § 46A-5-102; Syl. Pt. 6., Chrysler Credit Corp. v. Copley, 428 S.E.2d 313 (W. Va. 1993)).

Chandler asserts that West Virginia recognizes both common law and WVCCPA statutory unconscionability causes of action and that Count I of the first amended complaint pleads facts supporting a timely common law unconscionability claim as well as a statutory unconscionability claim for set-off of the debt. ECF No. 14, at 5-8. This is true, she argues, regardless

of the fact that she has styled Count I as "unconscionable inducement." Id. at 8.  Chandler also contends that to the extent the court construes Count I as a WVCCPA claim and not a common law claim, she is entitled to affirmatively raise such a claim for set-off under W. Va. Code § 46A-5-102 to prevent foreclosure and that such a claim is not barred by the relevant statute of limitations. Id. at 9-10.

In their reply, the defendants reiterate their position that unconscionable inducement is not a cognizable common law claim in West Virginia.  ECF No. 15, at 2.  They also argue that Chandler has failed to plead a statutory unconscionable inducement claim pursuant to W. Va. Code § 46A-2-121 inasmuch as she did not cite the specific code section and Count I fails to satisfy the Twombly/Iqbal plausibility pleading standard. Id. at 3-5.  They assert that the issue is more than just one of nomenclature inasmuch as they were not put on notice of such a claim and should not be "required to add in every alternative theory for dismissal under a claim which Plaintiff failed to bring." Id. at 4.

To the extent the court finds that the plaintiff has pled a claim under W. Va. Code § 46A-2-121, the defendants also request an opportunity for further briefing on grounds for dismissal of such a claim, including the statute of limitations as well as other WVCCPA defenses such as Chandler's "failure to

provide the required notice of right to cure prior to
instituting the action" under W. Va. Code § 46A-5-108.  Id. at
5.  Insofar as Chandler seeks to use her response to cure the
complaint's failure to plead a claim under W. Va. Code §
46A-2-121, the defendants posit that she must do so by amendment
rather than response.  Id. at 6.  Additionally, they note that
after the original motion to dismiss raised the issue that
common law unconscionable inducement claims are not cognizable
in West Virginia, Chandler filed the first amended complaint
that fails to affirmatively allege a claim under W. Va. Code §
46A-2-121, indicating that she did not intend to raise such a
claim.  Id.

        Notwithstanding these points, the defendants again
assert that a claim under W. Va. Code § 46A-2-121 would be
barred by the statute of limitations inasmuch as W. Va. Code §
46A-5-102 is inapplicable to claims brought by a consumer
herself.  Id. at 6-7.  And to the extent the plaintiff claims
Count I only concerns equitable relief not subject to the
statute of limitations, the defendants argue that doctrines such
as negligence, laches, unclean hands, and in pari delicto
operate to bar her claim in equity.  Id. at 7-9.

a.  The Statute

        Insofar as the first amended complaint attempts to
plead a statutory unconscionability and unconscionable
inducement claim, the court notes that both are recognized under
the WVCCPA.  W. Va. Code § 46A-2-121(1)(a) provides as follows:

> With respect to a transaction which is or gives rise
> to a consumer credit sale, consumer lease or consumer
> loan, if the court as a matter of law finds . . .[t]he
> agreement or transaction to have been unconscionable
> at the time it was made, or to have been induced by
> unconscionable conduct such as affirmative
> misrepresentations, active deceit or concealment of a
> material fact, the court may refuse to enforce the
> agreement . . .

"By its terms, this statute seems to recognize two variants of
an unconscionability claim: one focusing on the terms of the
agreement itself and the other examining whether the contract
was induced by unconscionable means."  Blizzard v. Infinity Home
Mortg., LLC, No. 2:15-cv-13553, 2016 WL 5329614, at *3 (S.D. W.
Va. Sept. 21, 2016) (citation omitted).  The Fourth Circuit in
McFarland v. Wells Fargo Bank, N.A., 810 F.3d 273 (4th Cir.
2016), characterized these two variants of unconscionability as
different theories that may support a WVCCPA unconscionability
claim: one with its "genesis" in the common law doctrine of
unconscionability under which the plaintiff must demonstrate
both procedural unconscionability, i.e., "unfairness in the
bargaining process," and substantive unconscionability, i.e.,
"unfairness in the contract itself"; and the other being

18

unconscionable inducement "based solely on factors predating acceptance of the contract and relating to the bargaining process," such as affirmative misrepresentations or active deceit, which does not require a showing of substantive unconscionability.  Id. at 277-78, 283-85.

    As for the first theory of recovery, the procedural prong requires consideration of "status" factors, such as, "the relative positions of the parties, the adequacy of the bargaining position, and the meaningful alternatives available to the plaintiff."  McFarland, 810 F.3d at 285-86 (citing Quicken Loans, Inc. v. Brown, 737 S.E.2d 640, 657 (W. Va. 2012)); see also Syl. Pt. 10, Brown v. Genesis Healthcare Corp., 729 S.E.2d 217 (W. Va. 2012) ("Brown II") ("Procedural unconscionability involves a variety of inadequacies . . . [that] include, but are not limited to, the age, literacy, or lack of sophistication of a party; hidden or unduly complex contract terms; the adhesive nature of the contract; and the manner and setting in which the contract was formed, including whether each party had a reasonable opportunity to understand the terms of the contract.") (quoting Syl. Pt. 17, Brown v. Genesis Healthcare Corp., 724 S.E.2d 250 (W. Va. 2011) ("Brown I"), vacated on other grounds sub nom. Marmet Health Care Ctr., Inc. v. Brown, 556 U.S. 530 (2012)).

The substantive prong focuses on whether the contract, or one of its terms is, "both 'one-sided' and 'overly harsh' as to the disadvantaged party."  McFarland, 810 F.3d at 279 (citing Dan Ryan Builders, Inc. v. Nelson, 737 S.E.2d 550, 558 (W. Va. 2012); Syl. Pt. 12, Brown II, 729 S.E.2d 217)).  "The factors to be weighed in assessing substantive unconscionability vary with the content of the agreement.  Generally, courts should consider the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and public policy concerns."  Syl. Pt. 12, Brown II, 729 S.E.2d 217 (quoting Syl. Pt. 19, Brown I, 724 S.E.2d 250).

With regard to the second WVCCPA unconscionability theory, i.e., unconscionable inducement, the Fourth Circuit noted in McFarland that it is different from procedural unconscionability in that it turns on "affirmative misrepresentations or active deceit."  810 F.3d at 286 (citing Quicken Loans, 737 S.E.2d at 653-55, 657).  Indeed, as this court recognized in Blizzard, 2016 WL 5329614, at *4 n. 6, W. Va. Code § 46A-2-121(a)(1) was amended to specify "affirmative misrepresentations, active deceit or concealment of a material fact" as examples of unconscionable inducement following the McFarland decision.  See Act effective June 8, 2016, ch. 41, art. 2, § 46A-2-121(a)(1), 2016 W. Va. Laws.

The Fourth Circuit has recently observed the same change in the statute following the <u>McFarland</u> decision.  <u>See</u> <u>Alig v. Quicken Loans, Inc.</u>, ---F.3d----, 2021 WL 899305, at *13 (4th Cir. March 10, 2021).  In <u>Alig</u>, the court further determined: "For claims based on affirmative misrepresentations, plaintiffs must demonstrate that they subjectively relied on that conduct.  For claims based on concealment, however, a plaintiff need only show that the defendant's conduct was unconscionable and that this unconscionable conduct contributed to the formation of the plaintiff's decision to enter the loan."  <u>Id.</u> at *15.

Assuming Count I attempts to plead statutory unconscionable inducement and unconscionability claims, the defendants contend that Chandler's claims are barred by the four-year statute of limitations found in W. Va. Code § 46A-5-101(1):

> If a creditor or debt collector has violated the provisions of this chapter applying to . . . fraudulent or unconscionable conduct, . . . the consumer has a cause of action to recover: (a) Actual damages; and (b) a right in an action to recover from the person violating this chapter a penalty of $1,000 per violation: Provided, That the aggregate amount of the penalty awarded shall not exceed the greater of $175,000 or the total alleged outstanding indebtedness . . . . With respect to violations arising from . . . consumer loans . . ., no action pursuant to this subsection may be brought more than four years after the violations occurred . . . .

W. Va. Code § 46A-5-101(1).  This subsection authorizes claims for damages resulting from the unconscionable conduct of creditors and debt collectors and places a four-year limitations period on such claims, *i.e.*, those for damages arising under the same subsection, when they involve, inter alia, consumer loans.[4]

The applicability of the statute of limitations is readily discerned from the face of the complaint and the bankruptcy court records.  See Dean v. Pilgrim's Pride Corp., 395 F.3d 471, 474 (4th Cir. 2005) ("The raising of the statute of limitations as a bar to plaintiffs' cause of action constitutes an affirmative defense and may be raised by motion pursuant to Fed. R. Civ. P. 12(b)(6), if the time bar is

---

[4]    The WVCCPA defines "consumer loan" as:

> a loan made by a person regularly engaged in the business of making loans in which:
>> (a) The debtor is a person other than an organization;
>> (b) The debt is incurred primarily for a personal, family, household or agricultural purpose;
>> (c) Either the debt is payable in installments or a loan finance charge is made; and
>> (d) Either the principal does not exceed forty-five thousand dollars or the debt is secured by an interest in land or a factory-built home as defined in section two, article fifteen, chapter thirty-seven of this code.

W. Va. Code § 46A-1-102(15)(a)-(d).  The parties do not dispute that the mortgage loan originated by Greenlight is a consumer loan, and based on the materials before the court, it appears that the loan fits this definition.

apparent on the face of the complaint."). Chandler knew that
the loan was home-secured by November 10, 2008, at the latest,
inasmuch as she represented that it was home-secured in her
bankruptcy filings made that date. She also represented that
she would retain the collateral, the 4 Maple Tree Lane townhome,
and continue to make regular payments on the loans secured
thereby. More than eleven years elapsed between the date of
these filings, November 10, 2008, and the date she first
asserted the unconscionability claim in her original complaint
before the Circuit Court of Kanawha County, February 10, 2020.

Chandler asserts that W. Va. Code § 46A-5-102 allows
her to avoid the statute of limitations by asserting her claim
as one for set-off against any debt owed on the loan. Section
46A-5-102 plainly does not apply here where it is not the lender
that is suing the consumer but it is the consumer suing the
lender. That section prescribes, in full, "Rights granted by
this chapter may be asserted as a claim for setoff or defense to
an action against a consumer without regard to any limitation of
actions. Any counterclaim is subject to the appropriate
limitation of actions set forth in this chapter." W. Va. Code §
46A-5-102. When interpreting this section of the WVCCPA, the
Supreme Court of Appeals of West Virginia has held: "Where a
consumer is sued for the balance due on a consumer transaction,
any asserted defense, setoff, or counterclaim available under
the Consumer Credit Protection Act, W.Va. Code, 46A-2-101, et

seq., may be asserted without regard to any limitation of actions under W.Va. Code, 46A-5-102 (1974)."[5]  Syl. Pt. 6, <u>Chrysler Credit Corp.</u>, 428 S.E.2d 313.

This interpretation accords with the defendants' understanding that W. Va. Code § 46A-5-102 only operates to allow a set-off claim to proceed under the statute where a consumer is sued for the balance due on a debt.  Inasmuch as W. Va. Code § 46A-5-102 does not apply, the statutory claim for set-off would be subject to W. Va. Code § 46A-5-101(1)'s four-year limitations period, which has long elapsed.

Moreover, the defendants are correct to point to W. Va. Code § 46A-5-108 regarding notice of the right to cure an alleged violation of W. Va. Code § 46A-2-121.  Under W. Va. Code § 46A-5-108(a),

> No action may be brought pursuant to this article and articles two, three and four of this chapter until the consumer has informed the creditor or debt collector in writing and by certified mail, return receipt requested, to the creditor's or debt collector's registered agent identified by the creditor or debt collector at the office of the West Virginia Secretary of State or, if not registered with the West Virginia Secretary of State, then to the creditor's or debt collector's principal place of business, of the alleged violation and the factual basis for the violation and provide the creditor or debt collector

---

[5]    W. Va. Code § 46A-5-102 was amended in 2017, long after <u>Chrysler Credit Corp.</u>, to specify that counterclaims are subject the WVCCPA's limitations periods.  <u>See</u> Act effective July 4, 2017, ch. 36, art. 5, § 46A-5-102, 2017 W. Va. Laws.  Inasmuch as Count I involves a claim for set-off rather than a counterclaim, <u>Chrysler Credit Corp.</u> is still applicable.

> forty-five days from receipt by the agent or at the
> principal place of business referenced above of the
> notice of violation but twenty days in the case a
> cause of action has already been filed to make a cure
> offer, which shall be provided to the consumer's
> counsel or, if unrepresented, to the consumer by
> certified mail, return receipt requested: <u>Provided</u>,
> That the consumer shall have twenty days from receipt
> of the cure offer to accept the cure offer or it is
> deemed refused and withdrawn. When a claim under the
> provisions set forth in section one hundred one is
> presented as a counterclaim, cross-claim or third
> party claim, the notice of right to cure shall be
> served with the counterclaim, cross claim or third
> party claim in any manner permitted by the Rules of
> Civil Procedure.

(emphasis in original).  Any statutory unconscionability or

unconscionable inducement claim brought by Chandler must proceed

pursuant to W. Va. Code § 46A-2-121.  She makes no allegation

that she provided pre-suit notice of the right to cure to the

defendants, and there is no indication in the record that she

has done so.  The failure to afford pre-suit notice of the right

to cure provides a basis for dismissal of any statutory claim in

addition to the lapse of the statute of limitations.


### b.  Common Law


        Apart from the statutory claim addressed above,

Chandler asserts that she has alleged a common law claim

grounded in unconscionability.  She requests equitable remedies,

including restitution and release of the lien.

Indeed, the relief she seeks is necessarily equitable. West Virginia, a deed of trust state, allows foreclosure sales by trustees under W. Va. Code § 38-1-1, et seq., without judicial interference, for the purposes of "allowing . . . a more time efficient and economical method of foreclosure." Lucas v. Fairbanks Cap. Corp., 618 S.E.2d 488, 495 (W. Va. 2005). In Lucas, the plaintiffs sued the loan servicer for "breach of the duty of good faith and fair dealing, illegal pursuit of foreclosure, and collection of unauthorized charges" and brought claims for "breach of fiduciary duty as trustee and illegal pursuit of forfeiture" against the trustee. Id. at 491. The Supreme Court of Appeals considered, inter alia, a certified question concerning whether the trustee owed a fiduciary duty, prior to foreclosure, to "consider objections to foreclosure raised by the trust grantor." Id. at 493.

The court answered that question in the negative, holding that W. Va. Code § 38-1-3 did not impose such a duty. Id. at 497. The court observed that "a trustee does not have the power to resolve disputes between the grantor and grantee," and held that "the proper remedy is for the grantor to seek an injunction or to file an action to have the foreclosure sale set aside." Id. at 497-98 (citations omitted).

In this case, the claim grounded in common law unconscionability asks for remedies that, if granted, will halt foreclosure of the loan at issue.[6] Lucas makes clear that requesting equitable relief of this nature from a court is, in effect, the only option for plaintiffs like Chandler who face impending foreclosure.[7]

Insofar as the plaintiff undertakes to state her claim on a ground of common law unconscionability, the court notes that "[u]nconscionability generally is considered to be an affirmative defense to a claim for breach of contract." Mountain State Coll., 742 S.E.2d at 101 n. 6 (citing State ex rel. Johnson Controls, Inc. v. Tucker, 29 S.E.2d 808 (2012); State ex rel. Richmond Am. Homes of W. Va., Inc. v. Sanders, 717 S.E.2d 909 (2011)) (citations omitted); see also, e.g., Watkins v. Wells Fargo Home Mortg., 631 F. Supp. 2d 776, 781 (S.D. W. Va. 2008) (calling unconscionability a "common law contract defense[]"); New v. GameStop, Inc., 753 S.E.2d 62, 74 (W. Va. 2013) (quoting Syl. Pt. 2, Johnson Controls, Inc., 717 S.E.2d 808, for the proposition that the "defense of, inter alia,

---

[6]    The same is true of the fraud and estoppel claims discussed in the succeeding sections of this opinion.

[7]    This, of course, assumes that the foreclosing party does not opt for the more time-consuming and costly judicial sale procedure set forth in W. Va. Code § 55-12-1, et seq. See generally Lucas, 618 S.E.2d at 495 (describing the differences between the trustee sale and judicial sale statutes).

unconscionability 'may be applied to invalidate an arbitration agreement.'").

This court has, however, considered, without deciding, unconscionability claims as both common law and statutory unconscionability causes of action in the consumer home loan context.  See Hanshaw v. Wells Fargo Bank, N.A., No. 2:14-cv-28042, 2015 WL 5345439, at *6 n. 3 (S.D. W. Va. Sept. 11, 2015); Adkins v. CMH Homes Inc., No. 3:13-32123, 2014 WL 2112859, at *3 (S.D. W. Va. May 19, 2014); but see Bell v. Magnum Land Servs., LLC., No. 1:13CV113, 2014 WL 12638025, at *2 (N.D. W. Va. Mar. 18, 2014) (finding a standalone common law unconscionability count to fail to state a claim inasmuch as the plaintiffs offered no law to controvert the above-quoted footnote from Mountain State Coll.).[8]

Accordingly, the court will consider whether the first amended complaint pleads facts that satisfy the procedural and substantive prongs of common law unconscionability as discussed in the preceding section.  See, supra, at 18-20; see also Adkins, 2014 WL 2112859, at *3-5 (performing a procedural and

---

[8]    It is worth noting that in addition to footnote 6 of Mountain State Coll., the court in Bell also relied on footnote 9 of the same opinion, which concerned unconscionable inducement rather than general unconscionability claims.  Bell, 2014 WL 12638025, at *2 (citing Mountain State Coll., 742 S.E.2d at 102 n. 9).

substantive unconscionability analysis to evaluate the common law unconscionability claim).[9]

With respect to procedural unconscionability, Chandler has pled that she is unsophisticated in financial matters, a point furthered by the allegations of continual borrowing and her eventual bankruptcy, and she has pled that she has only a high school education.  She has also pled that the mortgage contract was a contract of adhesion drafted by Greenlight. Moreover, the alleged circumstances of contract formation, i.e., the signing during busy meal hours at a Wendy's without the benefit of consulting a real estate professional, support procedural unconscionability.

As for substantive unconscionability, Chandler has pled that "the loan is home-secured, includes previously unsecured debt, and has an interest rate typically accompanying unsecured loans.  Given that this is a home-secured loan, the 13.9% interest rate is exorbitant."  ECF No. 8, at ¶ 30.  As indicated herein, the fact that the loan is home-secured is

---

[9]     The court in Hanshaw only addressed whether the common law unconscionability claim was time-barred.  2015 WL 5345439, at *10 n. 8 ("[I]nsofar as Count I constitutes a common-law claim, the record is similarly insufficient to establish that it is time-barred because the Complaint does not provide when Plaintiffs discovered or should have discovered Defendants' alleged wrongdoing . . . . As such, the Court DENIES the Motion to Dismiss, insofar as it argues that the common-law unconscionability claim in Count I is time-barred.")  It therefore did not have occasion to analyze procedural and substantive unconscionability.

rather unremarkable inasmuch as the loan is a debt consolidation loan that refinanced an existing second mortgage along with credit card debt.  While a relatively high interest rate would be expected, 13.9% would seem particularly high.

Notably, the Supreme Court of Appeals has held that:

> A contract term is unenforceable if it is both procedurally and substantively unconscionable. However, both need not be present to the same degree. Courts should apply a "sliding scale" in making this determination: the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the clause is unenforceable, and vice versa.

Syl. Pt. 9, Brown II, 729 S.E.2d 217 (quoting Syl. Pt. 20, Brown I, 724 S.E.2d 250).  Here, the case for procedural unconscionability is potentially greater than that for substantive unconscionability although the 13.9% interest rate is a matter of substantive concern.  Evidentiary development of all the surrounding circumstances, including those attendant to the formation of the loan and details of that which was being refinanced or advanced as the case may be, is a necessary prerequisite to a determination of whether both prongs of the unconscionability analysis are met.

Still, as the defendants argue, the common law unconscionability claim may be barred by laches.  Relief sought

in Count I is equitable in nature.  "Mere delay will not bar
relief in equity on the ground of laches. 'Laches is a delay in
the assertion of a known right which works to the disadvantage
of another, or such delay as will warrant the presumption that
the party has waived his right.'" Syl Pt. 1, <u>State ex rel. Smith</u>
<u>v. Abbot</u>, 418 S.E.2d 575 (W. Va. 1992) (quoting Syl. Pt. 2, <u>Bank</u>
<u>of Marlinton v. McLaughlin</u>, 17 S.E.2d 213 (1941)); <u>see also</u>,
<u>Province v. Province</u>, 473 S.E.2d 894, 904 (W. Va. 1996) ("The
elements of laches consist of (1) unreasonable delay and (2)
prejudice.").

Chandler possessed knowledge that the loan was
home-secured, at the latest, by November 10, 2008, the date of
her relevant bankruptcy filings, but did not file suit until
February 10, 2020.  Arguably, the more than eleven years of
inaction may warrant a presumption that Chandler waived her
right to attempt to void the mortgage loan contract as
unconscionable or unconscionably induced.  In addition, the
defendants may have experienced prejudice inasmuch as Chandler
continued to live in her townhome without making voluntary
payments on the mortgage following her discharge from
bankruptcy, as she indicated she would do in her bankruptcy
filings, even though the mortgage and lien pertaining thereto
survived the bankruptcy.  In Chandler's bankruptcy proceeding
she listed the value of her townhome as being $95,500.  At that
time she listed her secured debt on that property as being

$56,500 owed to Countrywide and $45,300 owed to Specialized Loan Servicing, indicating a negative equity of $6,300.  Over the next eleven years and three months, from November 10, 2008, to February 10, 2020, she made no payments on the second mortgage. Consequently, the amount of principal and accumulated interest owed on the second mortgage, coupled with the balance owing on the first mortgage, would likely have increased the negative equity and driven the lien indebtedness to a point that is even further in excess of the value of the property - thus assuring a substantial loss, upon foreclosure, that the second mortgage holder would have no means to recover.  The gravity of that loss is, however, tempered by the failure of the defendants to give notice of the prospect of foreclosure until July 2019.

The court thus observes that to the extent Count I pleads a common law unconscionability cause of action, such a claim may be barred by the doctrine of laches.  That determination, too, will require further evidentiary development.

As for common law unconscionable inducement, the Supreme Court of Appeals has observed that it has never recognized a standalone claim for unconscionable inducement outside of that asserted under W. Va. Code § 46A-2-121 of the WVCCPA.  Mountain State Coll., 742 S.E.2d at 102 n. 9; see also Staats v. Bank of Am., N.A., No. 3:10-CV-68, 2010 WL 10899255,

at *9 (N.D. W. Va. Nov. 4, 2010) ("The plaintiffs have cited no authority, and the Court is aware of none, for the proposition that West Virginia law recognizes a common law cause of action for unconscionable inducement."). Accordingly, any common law claim for unconscionable inducement pled in Count I is dismissed.

### 2.   Contract Defense of Fraud (Count II)

The defendants argue that Count II, "Contract Defense of Fraud," is barred by the two-year limitations period for fraud found in W. Va. Code § 55-2-12.  ECF No. 13, at 6-8. Inasmuch as the loan at issue was originated in December 2005, the defendants assert that the time to file a fraud claim elapsed in December 2007.  Id. at 7.  Notwithstanding this point, the defendants claim that the November 10, 2008 filings in Chandler's bankruptcy proceedings demonstrate that she was aware of the allegedly tortious behavior on that date since she acknowledged that the loan originated by Greenlight was secured by the 4 Maple Tree Lane townhome.  Id.  The defendants accordingly argue that to the extent the discovery rule applies, the limitations period would have begun to run by November 10, 2008, and would have expired on November 10, 2010, at the latest.  Id.

As to Count II, Chandler argues that her claim for fraud is not barred by the statute of limitations inasmuch as she seeks equitable relief, including restitution and release of the lien.  ECF No. 14, at 10-11.  Since she has pled an equitable claim for fraud, and inasmuch as statutes of limitations do not apply to equitable claims, she contends that she is not barred from bringing such a claim.  Id.  On a related note, Chandler argues that "[a] defense to contract or claim for setoff may be asserted at any time during the collection on a contract."  Id. at 11 (citing W. Va. Code §§ 46A-2-101(7), 46A-2-102(3); Beattie v. Skyline Corp., 906 F. Supp. 2d 528, 544 (S.D. W. Va. 2012); Chrysler Credit Corp, 428 S.E.2d 313; One Valley Bank of Oak Hill, Inc. v. Bolen, 425 S.E.2d 829 (1992)).  She also cites Dunn v. Rockwell, 689 S.E.2d 255, 266 (2009), for the proposition that "statutes of limitations do not apply when the claims seek to rescind a deed to land or cancel a contract" inasmuch as such claims seek equitable relief.  ECF No. 14, at 11.

In their reply, the defendants argue that Chandler cannot avail herself of equitable principles since her November 10, 2008 bankruptcy filings demonstrate knowledge that the loan at issue was secured by her home and she waited eleven more years to file this action while making no payments on the second mortgage though she had stated her intentions in the bankruptcy case to "retain [the] collateral and continue to make regular

payments."  ECF No. 12-1, at 32; ECF No. ECF No. 15, at 7-9.

Specifically, the defendants claim she is barred by her own

negligence or laches.  Id. at 8.

Count II faces problems similar to those identified

with Count I.  It is even less clear with respect to Count II

than it was with regard to Count I whether Chandler proceeds

with a common law or WVCCPA fraud claim, or both, inasmuch as

there are no references to the WVCCPA in the count, yet the

plaintiff cites to two WVCCPA provisions in her response brief,

W. Va. Code §§ 46A-2-101(7), 46A-2-102(3), for the proposition

that her claim is not barred by the statute of limitations.[10]

Regardless, she solely seeks equitable relief in Count

II, and laches rather than a statute of limitations applies to

fraud claims based in equity.  See Syl. Pt. 7, Dunn, 689 S.E.2d

255 ("Where a suit based on fraud is not for damages but seeks

---

[10]    These provisions prescribe that under certain
circumstances, "any claim or defense founded in fraud, lack or
failure of consideration or a violation of the provisions of
this chapter as specified in section one hundred one, article
five of this chapter, may be asserted by a buyer or lessee at
any time, subject to the provisions of this Code relating to
limitation of actions."  W. Va. Code § 46A-2-101(7) (so
providing when a buyer or lessee asserts such claims against a
holder in due course of a negotiable instrument); W. Va. Code §
46A-2-102(3) (so providing when a buyer or lessee asserts such
claims against an assignee of a negotiable instrument).
Presumably, Chandler cites these sections for the proposition
that she may bring her fraud claim "at any time," although the
court notes that each section explicitly subjects such claims to
the applicable limitations period.  This point, however, is
immaterial inasmuch as Chandler asserts only an equitable claim
for fraud.

to rescind a writing or impose a trust or other equitable
relief, it is not a common law action for fraud but is equitable
in nature.  Consequently, the doctrine of laches is applicable
rather than any specific statute of limitations period.")
(quoting Syl. Pt. 3, <u>Laurie v. Thomas</u>, 294 S.E.2d 78 (1982)).

Since the fraud alleged in the complaint hinges on the
purported misrepresentations of Greenlight, Count II may be
barred by laches for the same reasons that the equitable relief
sought in Count I may be barred by this equitable doctrine.  As
the court concluded with respect to the common law
unconscionability claim in Count I, Count II may proceed at this
time, with the defense of laches to be resolved at a later
point.

### 3.  Estoppel (Count III)

The defendants assert that Chandler has failed to
plead two elements of an estoppel claim, namely, that there was
a false representation or concealment of material facts and that
the plaintiff was without knowledge or the means of knowledge of
the real facts.  ECF No. 13, at 8-10.

With respect to the false representation or
concealment element, the defendants argue that "the very conduct
Plaintiff complains of — that SLS failed to attempt to collect
her discharged debt following bankruptcy — is prohibited by

36

federal law as explicitly set forth in Plaintiff's bankruptcy discharge Order." Id. at 9. The defendants assert that Chandler's personal obligations on the mortgage were discharged pursuant to 11 U.S.C. § 524(a)(2) and that further solicitation of payments from her personally following her discharge from bankruptcy would have subjected it to civil liability. Id.; ECF No. 15, at 10. However, the defendants contend, the lien remained on the property and was subject to foreclosure inasmuch as Chandler failed to make voluntary payments to satisfy the loan, the term of which had not expired. ECF No. 13, at 9-10; ECF No. 15, at 10. Additionally, the defendants reference Chandler's statements in her bankruptcy filings that she would continue to make payments on the mortgage at issue following discharge and point out that she does not allege in the first amended complaint that Specialized Loan Servicing took action to dissuade her from making payments such that foreclosure would become necessary. ECF No. 13, at 10.

As for the knowledge or means of knowledge element, the defendants argue that, "at a minimum, Plaintiff had 'the means of knowledge of the real facts' in her own bankruptcy filings and discharge Order." Id. By this, the defendants suggest that Chandler's bankruptcy filings and the Discharge of Debtor order acknowledged the persistence of the lien and that the property might be foreclosed absent voluntary payments on the mortgage. Id.; ECF No. 15, at 12.

On the false representation or concealment element, Chandler argues that she has pled facts such that:

> [a] reasonable fact finder could conclude that
> Defendant SLS's failure to communicate to Plaintiff
> that payments were owed under the parties' agreement
> to satisfy the lien amounts to a concealment that
> payments were required to avoid foreclosure of the
> lien, and further, that Defendant's conduct falsely
> represented to Plaintiff that it had written off or
> otherwise cancelled her loan.

ECF No. 14, at 12.  She further posits that the defendant's argument regarding the impropriety of debt collection following the discharge from bankruptcy is a "red herring" inasmuch as "federal law governing the servicing of mortgage loans provides that monthly statements should still be sent to borrowers following bankruptcy discharge, except for [] certain circumstances not present here."  Id. at 12-13 (citing 12 C.F.R. § 1026.41(e)(5)).  She states that her claim for estoppel is not grounded in a misrepresentation by Specialized Loan Servicing concerning her personal obligations on the loan or its right to enforce the lien.  Id. at 13.  Instead, she asserts that her "contention is that Defendant SLS cannot fail to exercise its right to collect to enforce its lien for more than ten years, then appear from out of the blue to claim the property through foreclosure."  Id.  Chandler offers no response to the knowledge or means of knowledge element arguments raised by the defendants.

38

"The Supreme Court of Appeals of West Virginia has treated equitable estoppel as a viable cause of action." Holtzapfel v. Wells Fargo Bank, N.A., No. 2:12-00937, 2013 WL 1337283, at *5 (S.D. W. Va. Mar. 29, 2013) (citing Folio v. City of Clarksburg, 655 S.E.2d 143, 148 (W. Va. 2007) (per curiam); Syl. Pts. 3-4, Cleaver v. Big Arm Bar & Grill, Inc., 502 S.E.2d 438 (W. Va. 1998)).  A claim for equitable estoppel is comprised of the following elements:

> [T]here must exist a false representation or a concealment of material facts; it must have been made with knowledge, actual or constructive of the facts; the party to whom it was made must have been without knowledge or the means of knowledge of the real facts; it must have been made with the intention that it should be acted on; and the party to whom it was made must have relied on or acted on it to his prejudice.

Syl. Pt. 3, Folio, 655 S.E.2d 143.

The estoppel claim of the first amended complaint proceeds as follows:

> Following Plaintiff's bankruptcy, Defendant SLS ceased servicing Plaintiff's loan, including by no longer sending monthly statements . . . . As a result of Defendant SLS failing to continue servicing Plaintiff's loan, Plaintiff had a reasonable expectation that Defendant cancelled or otherwise wrote off her loan following her bankruptcy discharge . . . . As a result of Defendant's failure to continue servicing the loan, Plaintiff did not make payments or other arrangements to satisfy Defendant's lien.

ECF No. 8, at ¶¶ 41-43.  As pled, the claim focuses on Specialized Loan Servicing's conduct, more specifically, its failure to send monthly statements, following Chandler's

discharge from bankruptcy.  This, in Chandler's estimation, constitutes concealment for the purposes of the first element of equitable estoppel.

Chandler cites 12 C.F.R. § 1026.41, a section of Regulation Z, as support for the proposition that Specialized Loan Servicing should have been sending her monthly statements. The current version of that regulation has been effective since April 19, 2018.  See Mortgage Servicing Rules Under the Truth in Lending Act (Regulation Z), 83 FR 10553-01 (March 12, 2018) (to be codified at 12 C.F.R. pt. 1026) (setting an April 19, 2018 effective date).  The regulation now prescribes, inter alia, that servicers of mortgage loans must provide periodic statements "for each billing cycle" of such loans to consumer obligors.  12 C.F.R. § 1026.41(a)(1)-(2) (2018).  There is a bankruptcy exemption when: (a) a "consumer on the mortgage loan is a debtor in bankruptcy under title 11 of the United States Code or has discharged personal liability for the mortgage loan pursuant to 11 U.S.C. 727, 1141, 1228, or 1328"; and (b) one of four additional conditions are met:

> (1) The consumer requests in writing that the servicer cease providing a periodic statement or coupon book;
>
> (2) The consumer's bankruptcy plan provides that the consumer will surrender the dwelling securing the mortgage loan, provides for the avoidance of the lien securing the mortgage loan, or otherwise does not provide for, as applicable, the payment of pre-bankruptcy arrearage or the maintenance of payments due under the mortgage loan;

(3) A court enters an order in the bankruptcy case
providing for the avoidance of the lien securing the
mortgage loan, lifting the automatic stay pursuant to
11 U.S.C. 362 with regard to the dwelling securing the
mortgage loan, or requiring the servicer to cease
providing a periodic statement or coupon book; or

(4) The consumer files with the court overseeing the
bankruptcy case a statement of intention pursuant to
11 U.S.C. 521(a) identifying an intent to surrender
the dwelling securing the mortgage loan and a consumer
has not made any partial or periodic payment on the
mortgage loan after the commencement of the consumer's
bankruptcy case.

12 C.F.R. § 1026.41(e)(5)(i)(A)-(B).

But earlier versions of the pertinent portion of this
regulation were significantly different.  As above indicated, 12
C.F.R. § 1026.41 did not exist in any form until 2014.  See,
supra, at 10 n. 3.  Between January 10, 2014, and April 19,
2018, 12 C.F.R. § 1026.41(e)(5) read, in full: "Consumers in
bankruptcy.  A servicer is exempt from the requirements of this
section for a mortgage loan while the consumer is a debtor in
bankruptcy under Title 11 of the United States Code."  The
Consumer Financial Protection Bureau's commentary on the prior
language of the regulation clarified that its effect was to,
"provide[] a blanket exemption from the requirement to send a
periodic statement if a consumer is in bankruptcy or has
discharged personal liability for a mortgage loan through
bankruptcy."  Amendments to the 2013 Mortgage Rules Under the
Real Estate Settlement Procedures Act (Regulation X) and the
Truth in Lending Act (Regulation Z), 81 FR 72160-01, 72311 (Oct.

41

19, 2016) (to be codified at 12 C.F.R. pt. 1026) (emphasis added); see also, e.g., Tabb v. Ocwen Loan Servicing, LLC, 798 F. App'x 726, 730 (3d Cir. 2020) (per curiam) (noting in the context of a case filed prior to the April 19, 2018 amendments to 12 C.F.R. § 1026.41(e)(5) that "[a]lthough the Truth in Lending Act generally requires creditors to send periodic statements to mortgage debtors for each billing cycle, the Consumer Financial Protection Bureau (CFPB) has clarified that periodic statements are not required if the borrower's mortgage debt has been discharged in bankruptcy.") (citation omitted); Leahy-Fernandez v. Bayview Loan Servicing, LLC, 159 F. Supp. 3d 1294, 1301 (M.D. Fla. 2016) ("As alleged in the Complaint, Leahy-Fernandez received a discharge of the entirety of the mortgage debt such that she is no longer personally liable for the Debt . . . . Thus, TILA and Regulation Z did not compel Bayview to send a monthly statement.").

Accordingly, Specialized Loan Servicing was not required to send monthly statements, the periodic statements in this case, under 12 C.F.R. § 1026.41, for, at least,[11] the first nine years of the period of time at issue, i.e., Chandler's February 9, 2009 discharge from the bankruptcy proceeding, which

---

[11] As discussed in the context of Count IV below, the parties disagree as to whether monthly statements are owed under the current version of 12 C.F.R. § 1026.41(e)(5) and whether this provision now requires that monthly statements be sent to Chandler.

discharged her personal liability on the mortgage, through April 19, 2018, the date the current version of the regulation took effect.  Absent any argument that Specialized Loan Servicing was required to send monthly statements under any other source of law, it cannot be said that this defendant's failure to send monthly statements that were not required by 12 C.F.R. § 1026.41 for nine years following the bankruptcy discharge amounted to the concealment of any facts pertaining to the continued existence of the lien on the 4 Maple Tree Lane townhome.

Thus, the first amended complaint does not plausibly plead an equitable estoppel claim based on concealment.  And inasmuch as it also does not allege an equitable estoppel claim based on a misrepresentation by any party following the discharge from bankruptcy, it entirely fails to plead the first element of such a claim.

Additionally, Specialized Loan Servicing's arguments regarding the knowledge or means of knowledge element of equitable estoppel are well-taken.  Chandler's own bankruptcy filings acknowledge the lien on the 4 Maple Tree Lane townhome and further indicate that she planned to continue to make payments on the mortgage following the discharge from bankruptcy.  The Discharge of Debtor order informed Chandler that creditors would be prohibited from soliciting collections on discharged debts but very clearly stated that "a creditor may

have the right to enforce a valid lien, such as a mortgage or security interest, against the debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case.  Also, a debtor may voluntarily pay any debt that has been discharged." ECF No. 12-2, at 2.

Absent any allegation that Specialized Loan Servicing, or any other entity, took any action that might give Chandler the idea that the lien on the 4 Maple Tree Lane townhome had been extinguished for some reason after the discharge from bankruptcy, it is apparent that she had knowledge that the lien would continue to encumber the property.  Accordingly, dismissal of Count III is appropriate.

4.  Violation of Regulation Z Periodic Statement Rule (Count IV)

The defendants argue that Count IV, entitled "Violation of Regulation Z Periodic Statement Rule," should be dismissed for two reasons.  They first contend that this claim is alleged only against Specialized Loan Servicing but proceeds

under the Truth in Lending Act ("TILA"),[12] which provides a private right of action against creditors and not against loan servicers such as Specialized Loan Servicing.  ECF No. 13, at 10-11; ECF No. 15, at 12-13.  To the extent the court considers Count IV to be pled against U.S. Bank, the defendants assert that it should nonetheless be dismissed inasmuch as the first amended complaint does not allege that U.S. Bank is a creditor under TILA such that it could properly allege a claim against U.S. Bank.  ECF No. 15, at 13.

Second, the defendants also contend that the 12 C.F.R. § 1026.41(e)(5)(i) exempts Specialized Loan Servicing from providing periodic statements, the monthly statements at issue in this case.  Specifically, they assert that the exemption applies inasmuch as Chandler received a discharge of personal liability on the mortgage loan in accordance with 12 C.F.R. § 1026.41(e)(5)(i)(A) and Chandler's bankruptcy plan, "otherwise does not provide for, as applicable, the payment of

---

[12]    The portion of Regulation Z at issue, 12 C.F.R. § 1026.41, implements a specific provision of TILA, 15 U.S.C. § 1638(f).  See, e.g., Block v. Seneca Mortg. Servicing, 221 F. Supp. 3d 559, 589 (D.N.J. 2016).  Under 15 U.S.C. § 1638(f), "[t]he creditor, assignee, or servicer with respect to any residential mortgage loan shall transmit to the obligor, for each billing cycle, a statement setting forth" eight pieces of information pertaining to the mortgage loan, "to the extent applicable, in a conspicuous and prominent manner."  The specific pieces of information are not relevant to the analysis of this opinion inasmuch as Chandler challenges the failure to send any post-bankruptcy periodic statements and does not contend that periodic statements lacked the requisite information.

pre-bankruptcy arrearage or the maintenance of payments due under the mortgage loan," as prescribed in 12 C.F.R. § 1026.41(e)(5)(i)(B)(2).  ECF No. 13, at 11-12.  They further assert that "periodic statements are only required to resume upon a written request from Plaintiff to reinstitute statements or a reaffirmation of the debt."  Id. at 12 (citing 12 C.F.R. § 1026.41(e)(5)(ii); Loewy v. CMG Mortg., Inc., 385 F. Supp. 3d 1083, 1088–89 (S.D. Cal. 2019); St. Amour v. Fed. Home Loan Mortg. Corp., No. CV 18-254-WES, 2019 WL 1453055, at *2 (D.R.I. Apr. 2, 2019)); accord ECF No. 15, at 13-14.

        Chandler argues that she has pled Count IV against U.S. Bank since the first amended complaint "alleges that Defendant U.S. Bank, as trustee for the holder of the loan, is liable for all claims and defenses against the loan."  ECF No. 14, at 13 (citing ECF No. 8, at ¶ 4).  Inasmuch as TILA violations may be alleged against an original creditor or the assignee thereof (U.S. Bank being an assignee of Greenlight), she contends that Count IV should not be dismissed on the grounds that it was only asserted against Specialized Loan Servicing, the loan servicer.  Id. at 13-14.

        Additionally, Chandler asserts that the bankruptcy exemption does not apply inasmuch as the bankruptcy plan: did not provide that she would surrender the 4 Maple Tree Lane townhome securing the mortgage, did not provide for the

avoidance of the lien, did not account for pre-bankruptcy arrearages since she was current on her loan payments prior to filing for bankruptcy, and provided for the continued maintenance of payments due under the mortgage loan after the discharge.  Id. at 14.  She also claims that she did not need to "opt-in" to receiving periodic statements under 12 C.F.R. § 1026.41(e)(5)(ii) inasmuch as that particular provision only applies where the loan servicer is entitled to the post-bankruptcy exemption in the first place.  Id.

With respect to the defendants' argument that Count IV is pled only against Specialized Loan Servicing, an allegedly improper party under TILA, the court finds that it was also pled against U.S. Bank.  Although Count IV ostensibly pertains to the alleged failure of Specialized Loan Servicing to provide periodic statements under 12 C.F.R. § 1026.41, the first amended complaint plainly asserts that U.S. Bank, "as trustee, is liable for all claims and defenses against the loan."  ECF No. 8, at ¶ 4.  Thus, the court finds that this count is pled against U.S. Bank.

To the extent this claim is also pled against Specialized Loan Servicing, the court concludes that it should be dismissed.  Creditors are liable for TILA violations under 15 U.S.C. § 1640(a), but as this court has observed, "courts . . . have unanimously found that the section does not impose civil

liability on servicers." <u>Aliff v. Bank of America, N.A.</u>, No. 3:16-10119, 2017 WL 424878, at *3 (S.D. W. Va. Jan. 31, 2017 (collecting cases) (citation omitted).  Moreover, although assignees may be liable for TILA violations in limited circumstances, <u>see</u> 15 U.S.C. § 1641(a), Chandler only alleges that Specialized Loan Servicing services the mortgage loan and does not allege that it is Greenlight's assignee.  Accordingly, dismissal of Count IV is appropriate insofar as the claim is alleged against Specialized Loan Servicing.

        Whether the claim needed to be pled against U.S. Bank <u>as a creditor</u> is another issue altogether inasmuch as Chandler concedes that U.S. Bank is an assignee and not a creditor.  The court notes that assignees have materially limited liability under TILA as compared to creditors.  <u>Compare</u> 15 U.S.C. § 1640(a) (providing for liability of creditors "any creditor who fails to comply with any requirement imposed under this part . . . ."), <u>with</u> 15 U.S.C. § 1641(a) (providing for liability of assignees under TILA "only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement").  However, the parties have not briefed the matter apart from Chandler's unsupported assertion that U.S. Bank may be liable as an assignee and the defendants' likewise unsupported assertion that the complaint does not allege that U.S. Bank is a creditor such that a claim based on periodic

statements could be asserted against it.  Thus, the court
declines to dismiss Count IV as to U.S. Bank on this ground.

As for the defendants' argument that the
post-bankruptcy exemption found in 12 C.F.R. § 1026.41(e)(5)
applies, the court first notes that no party differentiates
between the current composition of 12 C.F.R. § 1026.41(e)(5) and
the prior version of the same subsection, which, as the
preceding section illustrates, provided loan servicers with a
much broader post-bankruptcy exemption from sending periodic
statements.  As discussed above, Specialized Loan Servicing
clearly did not owe Chandler any periodic statements under 12
C.F.R. § 1026.41(e)(5) until, at least, the first billing period
following April 19, 2018 inasmuch as the prior versions of the
regulation provided a blanket exemption from sending periodic
statements to consumers who have discharged personal obligations
in bankruptcy.

However, the first amended complaint broadly alleges
that Specialized Loan Servicing failed to send periodic
statements as required by 12 C.F.R. § 1026.41 "[f]rom January
10, 2014 to the present," the present referring to April 22,
2020, the date the first amended complaint was filed.  ECF No.
8, at ¶ 46.  Thus, the claim, as pled, alleges the failure to
send periodic statements as required by 12 C.F.R. § 1026.41

after April 19, 2018, when the current version of the provision at issue became effective.

No party disputes that the first part of the exemption as described in 12 C.F.R. § 1026.41(e)(5)(i)(A) is met inasmuch as Chandler's personal liability for the mortgage loan was discharged in bankruptcy. The dispute instead arises over whether "[t]he consumer's bankruptcy plan provides that the consumer will surrender the dwelling securing the mortgage loan, provides for the avoidance of the lien securing the mortgage loan, or otherwise does not provide for, as applicable, the payment of pre-bankruptcy arrearage or the maintenance of payments due under the mortgage loan," in which case the second part of the exemption would be met under 12 C.F.R. § 1026.41(e)(5)(i)(B)(2).

The court concludes that based on the allegations contained in the complaint and the bankruptcy filings pertaining thereto, Count IV should not be dismissed as to U.S. Bank on the ground that Specialized Loan Servicing was exempt from sending periodic notices from April 19, 2018 to April 22, 2020. Clearly, Chandler's bankruptcy plan did not provide that she would surrender the 4 Maple Tree Lane townhome, the dwelling securing the mortgage loan at issue, and it also did not provide for the avoidance of the lien arising therefrom. Chandler has alleged that she was current with her mortgage payments at the

time she filed for bankruptcy, and the arrearage portion of 12 C.F.R. § 1026.41(e)(5)(i)(B)(2) is accordingly inapplicable. Moreover, Chandler's bankruptcy filings indicate that she planned to continue to make voluntary payments on the mortgage loan following her discharge from bankruptcy, which accounts for "the maintenance of payments due under the mortgage loan" following discharge.  12 C.F.R. § 1026.41(e)(5)(i)(B)(2).

Further, the defendants' claim that "periodic statements are only required to resume upon a written request from Plaintiff to reinstitute statements or a reaffirmation of the debt" under 12 C.F.R. § 1026.41(e)(5)(ii) is misleading. ECF No. 13, at 12.  That subsection generally provides that "[a] servicer <u>ceases to qualify for an exemption</u> pursuant to paragraph (e)(5)(i), if the consumer reaffirms personal liability for the loan or any consumer on the loan requests in writing that the servicer provide a periodic statement or coupon book . . . ."  12 C.F.R. § 1026.41(e)(5)(ii) (emphasis added). In other words, 12 C.F.R. § 1026.41(e)(5)(ii) only applies if 12 C.F.R. § 1026.41(e)(5)(i) would otherwise exempt a servicer from sending periodic statements.

The defendants offer two cases, <u>Loewy</u>, 385 F. Supp. 3d at 1088–89, and <u>St. Amour</u>, 2019 WL 1453055, at *2, in support of their position that post-bankruptcy periodic statements were not required absent reaffirmation of personal liability or a written

request for further periodic statements made by Chandler.  St.
Amour is inapposite inasmuch as the court in that case did not
consider 12 C.F.R. § 1026.41(e)(5)(ii).  See St. Amour, 2019 WL
1453055, at *2.  Loewy stands for the proposition cited.  See
Loewy, 385 F. Supp. 3d at 1088-89 ("Once a debtor emerges from
bankruptcy, he or she must either 'reaffirm personal liability
for the loan [or] request in writing that the servicer provide a
periodic statement.'") (quoting 12 CFR § 1026.41(e)(5)(ii)).
However, Loewy is not persuasive here inasmuch as the court in
that case found that a consumer must reaffirm personal liability
or make a written request for periodic statements following her
discharge from bankruptcy without considering the other
operative language of 12 C.F.R. § 1026.41(e)(5)(ii), "ceases to
qualify for an exemption," which plainly indicates that 12
C.F.R. § 1026.41(e)(5)(ii) is only applicable where a servicer
is otherwise entitled to the post-bankruptcy exemption found in
12 C.F.R. § 1026.41(e)(5)(i).

     Inasmuch as the 12 C.F.R. § 1026.41(e)(5)(i)
post-bankruptcy exemption is inapplicable, Chandler did not need
to request periodic statements in writing or reaffirm her
personal liability on the loan to be entitled to periodic
statements under 12 C.F.R. § 1026.41 after April 19, 2018.
Accordingly, the court finds that dismissal of Count IV is only
appropriate insofar as it alleges a claim for violation of
Regulation Z against Specialized Loan Servicing.  Dismissal of

Count IV as to U.S. Bank is not warranted inasmuch as the claim is alleged against that defendant, the claim alleges that periodic notices were not sent to Chandler pursuant to 12 C.F.R. § 1026.41 after April 19, 2018, and the post-bankruptcy exemption found in 12 C.F.R. § 1026.41(e)(5)(i) does not apply based on the allegations in the complaint and the bankruptcy filings produced by the defendants.

### 5. Declaratory Judgment (Count V) and Unconscionable Debt Collection (Count VI)

In Count V, Chandler seeks a declaratory judgment that Specialized Loan Servicing is barred from collecting the subject debt that has arisen from the mortgage loan at issue.  Count VI, entitled "Unconscionable Debt Collection," alleges that Specialized Loan Servicing, "collected on a debt that was barred by the statute of limitations without including the required disclosure pursuant to West Virginia Code section 46A-2-128(f)." ECF No. 8, at ¶ 52.

The motion to dismiss the first amended complaint seeks dismissal of Counts V and VI.  ECF No. 13, at 13-20.  The memorandum in support of the motion also indicates that the defendants do not seek to collect on the balance due under the mortgage loan, but rather plan to foreclose on the lien that has arisen thereunder.  Id. at 15, 17-19.  In light of these representations, Chandler has requested in her response that the

court enter an order of voluntary dismissal for Counts V and VI, which pertain to personal debt collection, in accordance with Federal Rule of Civil Procedure 41(a)(2).  ECF No. 14, at 4.  In their reply, the defendants request that dismissal of these counts be ordered with prejudice.  ECF No. 15, at 2.

The court agrees that dismissal of these counts with prejudice is appropriate.  Regarding Count VI, there is no indication by the plaintiff that Specialized Loan Servicing has engaged in any kind of debt collection after Chandler's discharge from bankruptcy.  And inasmuch as Count V appears to be premised merely on the allegation that Specialized Loan Servicing engaged in debt collection and should be barred from doing so, there appears to be nothing left to declare for the purposes of declaratory judgment.  Thus, these claims are dismissed with prejudice but subject to resurrection during the course of this case if effort is made to collect the debt as distinguished from enforcement of a lien.

### IV.  Conclusion

Based on the foregoing, it is ORDERED that:

1.    The defendants' motion to dismiss the original complaint [ECF No. 3] be, and it hereby is, DENIED as moot.

2.    The defendants' motion to dismiss the first amended complaint [ECF No. 8] be, and it hereby is, GRANTED as

to Count I insofar as it asserts a statutory claim or a common
law claim for unconscionable inducement, and Count III against
U.S. Bank and Specialized Loan Servicing.  The motion to dismiss
the first amended complaint is GRANTED as to Count IV against
Specialized Loan Servicing.  These claims are dismissed with
prejudice.  The motion to dismiss the first amended complaint is
DENIED as to Count I insofar as it asserts a common law
unconscionability claim, Count II, and Count IV insofar as this
claim is pled against U.S. Bank and is based on a failure to
provide periodic statements from April 19, 2018, to April 22,
2020.  The motion to dismiss the first amended complaint is
further GRANTED as to Counts V and VI, which are dismissed with
prejudice subject to the resurrection limitation set forth
herein.

        The Clerk is requested to transmit this memorandum
opinion and order to all counsel of record and to any
unrepresented parties.

                              ENTER:  March 30, 2021


                              John T. Copenhaver, Jr.
                              Senior United States District Judge


55